**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA V., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 2:21-cv-14106 (BRM) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is an appeal by Plaintiff Lisa V. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner")[1] denying her applications for Social Security Disability Insurance Benefits under Title II of the Social Security Act (the "Act") and Supplemental Security Income under Title XVI of the Act. This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g). Having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 9.1(f), and for the reasons set forth below and for good cause shown, the Commissioner's decision is **VACATED**; and the matter is **REMANDED** for further proceedings consistent with this Opinion.

---

[1] Upon the Appeals Council's Order denying Plaintiff's request for a review of the decision of Administrative Law Judge Ricardy Damille ("ALJ"), the ALJ's decision became the final decision of the Commissioner. (ALJ Hearing Decision, Tr. 1.)

I.      **BACKGROUND**

　　A.     **Procedural History**

This case arises out of Plaintiff's challenge to the administrative decision of the Commissioner regarding her application for a period of disability, disability insurance benefits, and supplemental security income. In February 2018, Plaintiff applied for a period of disability and disability insurance benefits and filed a Title XVI application for supplemental security income, alleging disability beginning January 5, 2017. (Tr. 12.) The initial claim was denied on April 3, 2018, and upon reconsideration on July 9, 2018. (*Id.*) Plaintiff filed a written request for a hearing received on August 6, 2018. (*Id.*) The ALJ scheduled a hearing for October 8, 2019 but the matter was rescheduled and, due to the COVID-19 pandemic, the ALJ held a telephone hearing on June 23, 2020. (*Id.*) All participants, including an impartial vocational expert, attended the hearing by telephone. (*Id.*)

The ALJ issued a decision on August 24, 2020, finding Plaintiff was not disabled within the meaning of the Act. (*Id.* at 13.) On May 21, 2021, the Appeals Council denied Plaintiff's request for review of her appeal. (*Id.* at 1.) Having exhausted her administrative remedies, Plaintiff filed an appeal with this Court on July 23, 2021. (Compl. (ECF No. 1).) The administrative record is set forth in the transcript. (ECF No. 8.) On March 2, 2022, Plaintiff filed a memorandum of law in support of her appeal. (ECF No. 14.) On May 4, 2022, the Commissioner filed opposition. (ECF No. 17.) On May 17, 2022, Plaintiff filed a reply. (ECF No. 19.)

　　B.     **Factual Background**

As reflected in his written decision dated August 24, 2020, the ALJ made the following determinations concerning Plaintiff: she had not engaged in substantial gainful activity since January 5, 2017, the alleged onset date, and she had severe mental impairments of depression,

2

anxiety, post-traumatic stress disorder, and personality disorder. (Tr. 15.) He found Plaintiff's impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (specifically, the criteria of listings 12.04, 12.06, 12.08, and 12.15). (*Id.*)

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") during the relevant period. (*Id*. at 16–19.) The ALJ found Plaintiff could perform work at all exertional levels but with the following nonexertional limitations:

> [S]he is able to understand, remember and carry out simple instructions. She is restricted to work involving few if any work place changes and occasional decision-making. She can have occasional interaction with supervisors but cannot work in tandem with coworkers and can have no interaction with the public.

(*Id.* at 16.) Describing how he assessed Plaintiff's RFC, the ALJ explained that he considered Plaintiff's hearing testimony, finding her medically determinable impairments could reasonably be expected to cause the alleged symptoms—including memory issues, feeling overly tired and unable to get out of bed or leave her room, and anxiety attacks "24/7" worsened by medications—but her statements concerning intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical and other evidence in the record. (*Id.* at 17.) Turning from Plaintiff's allegations to the objective medical evidence, the ALJ considered records from Plaintiff's hospital stay from January 5, 2017 to January 7, 2017, outpatient psychiatric treatment at the Community Mental Health Center from May 2017 to May 2019, North Hudson Community Action Group from March 2018 to February 2020, and the Family First Program for therapy and medication for complaints of anxiety and depression in May 2020. (*Id.* at 18.) The ALJ noted,

> Although the claimant testified that she had problems with memory and concentration, as well as problems leaving the house, records from the Community Health Center did not indicate any evidence of agoraphobia and repeatedly noted that the claimant's attention, concentration, memory, judgement [sic] and insight were intact. ([Exhibits 3F, 4F, 6F, 10F]).

(*Id.* (citing Tr. 419–22, 423–29, 444–49, 511–50).) He also stated "records from the North Hudson Community Action Group . . . noted that a depression screening was repeatedly negative from March 2018 to February 2020 (Exhibit 13F)." (*Id.* (citing Tr. 800–991).) He further stated:

> While the claimant was subsequently referred to the Family First Program for therapy and medication for complaints of anxiety and depression in May 2020, there is no evidence that her symptoms were such to warrant recurrent emergency room visits, additional inpatient hospital admissions or participation in an intensive outpatient program due to her symptoms (Exhibit 15F).

(*Id.* (citing Tr. 1002–43).) He found "the evidence clearly establishes a severe impairment involving depression, anxiety, a personality disorder and PTSD. However, mental examinations were repeatedly normal with the exception of a depressed and anxious mood on occasion." (*Id.*)

After reviewing the objective medical evidence, the ALJ considered the medical opinion evidence in the record. (*Id.* at 19.) Plaintiff's record included medical opinions provided by Zisalo Wancier, M.D., who treated Plaintiff for her mental health impairments in 2017 and 2018 at the Community Health Center, and Bozena Bitner, M.D., Plaintiff's primary care physician since 2015. (*Id.* at 18–19.) The ALJ considered Dr. Wancier's functional capacity assessment dated May 15, 2018, in which Dr. Wancier opined Plaintiff "would be absent more than three times a month" and has "a moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; constant deficiencies of concentration and continual episodes of deterioration." (Exhibit 8F)." (*Id.* at 19 (citing Tr. 496–502).) The ALJ concluded Dr. Wancier's opinion was not persuasive and noted Dr. Wancier also assigned plaintiff "a [Global Assessment of Functioning] score of 60." (*Id.* (citing Tr. 497).) The ALJ next considered Dr. Bitner's medical source statement dated May 31, 2018, in which Dr. Bitner opined:

> [Plaintiff] would have constant interference with attention and concentration; incapable of even low stress jobs; can walk 4-5 city blocks; stand/walk three hrs. in an 8-hour day; needed unscheduled

4

> breaks every 2 hours; occasionally lift and carry 6 to 10 pounds; frequently lift and carry 0 to 5 pounds; and absent more than three times a month. (Exhibit 9F.)

(*Id.* (citing Tr. 503–10).) The ALJ found "Dr. Bitner note[d] physical limitations but his opinion is not supported, as there are no severe physical impairments reflected in the record." The ALJ further found, "With regard to the mental impairments, [Plaintiff's] mental examinations have been unremarkable for the most part except for depressed and anxious moods on some visits. At one point, it was noted that Lexapro was helping (Exhibit 10F)." (*Id.* (citing Tr. 551–90).)

The ALJ also considered a third-party function report completed by Plaintiff's mother which stated Plaintiff "has difficulty with memory, completing tasks, concentration, understanding, following instructions and getting along with others. However, she is able to take care of her kids; prepare simple meals; do laundry and dishes; drive a car." (*Id.*) The ALJ concluded:

> The medical evidence confirms [Plaintiff]'s difficulty with concentration, following instructions and getting along with others. I note that while the record supports limitations, the severity in combination is not disabling. As noted above, her mental examinations have been unremarkable for the most part and there is evidence of symptom response with treatment.

(*Id.*) Finally, the ALJ "found the opinions of [Disability Determination Services ("DDS")] that [Plaintiff] could perform basic simple tasks in a low contact environment persuasive (Exhibits 2A, 4A, 6A, 8A)" and further found these opinions "consistent with the medical evidence and the established [RFC]." (*Id.* (citing 61–73, 75–87, 89–101, 103–15).)

Considering Plaintiff's RFC, age, education, work experience, and vocational factors, the ALJ determined Plaintiff was not disabled because she could work as a cupola stocker, small products assembler, or an ampoule filler. (*Id.* at 20.)

## II.  STANDARD OF REVIEW

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## III.  THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of disability insurance. 20 C.F.R. § 404.1520.[2] First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

---

[2] Regulations for disability insurance and supplemental income benefits are virtually identical. For the purposes of this appeal, further citations will only be made to the disability insurance benefits regulations regarding disability evaluation, 20 C.F.R. § 404.1501, *et seq.* The parallel supplemental income benefits regulations are found under 20 C.F.R. § 416.901, *et seq.*

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. § 404, Subpart P, App'x 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairments are equal in severity to, or meet, those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d, 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains

the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e)–(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated at Section 404.1527 (for claims filed before March 27, 2017) or Section 404.1520c (for claims filed after March 27, 2017).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.*; 20 C.F.R. § 404.1523. Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings[.]" *Id.* at 263 n.2; *see Bowen*, 482

9

U.S. at 146–47 n.5. An administrative law judge bears the burden of proof for the fifth step. *Id.* at 263.

For the first four steps, the harmless error doctrine[3] requires a plaintiff to show: 1) an error occurred; and 2) but for that error, she might have proven her disability. *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when appealing a decision at the first four steps, a court considers whether the plaintiff articulated a basis for a decision in her favor, based on the existing record. If the plaintiff cannot, it is unlikely she will meet her burden of showing an error was harmful. *See e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19-21970, 2021 U.S. Dist. LEXIS 62340, at *20 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When

---

[3] The Supreme Court explained its operation in a similar procedural context in *Shinseki v. Sanders*, which concerned review of a governmental agency determination. 556 U.S. 396, 408–11 (2009). The Supreme Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* at 409. In such a case, "the claimant has the 'burden' of showing that an error was harmful." *Id.* at 410.

10

substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing 42 U.S.C. § 405(g)).

## IV.  DECISION

Plaintiff argues the ALJ's mental RFC determination is not supported by substantial evidence because he failed to provide the analysis required by the regulations concerning supportability and consistency when he found Dr. Wancier's and Dr. Bitner's opinions unpersuasive and the DDS evaluations persuasive. (ECF No. 14 at 10–18; ECF No. 19 at 4.) The Commissioner counters the ALJ's decision comports with the regulations because he assessed the persuasiveness of the opinions and substantial evidence supports his fact-finding. (ECF No. 17 at 11–18.) In response, Plaintiff contends the Commissioner relies on string citations to various places in the record that the ALJ himself did not address as to the supportability and consistency factors required by the regulations. (ECF No. 19 at 3.)

A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The RFC assessment is based on all the relevant evidence in the record, *id.*, and descriptions and observations of the claimant's limitations from her impairments provided by the claimant and other persons, 20 C.F.R. § 404.1545(a)(3). When assessing mental abilities, the nature and extent of the claimant's mental limitations and restrictions is assessed first and is followed by a determination of her RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(c). "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work." *Id.* A claimant's statements about pain or other symptoms, including intensity and persistence, will not alone establish disability; there must be medical signs

and laboratory findings which show medical impairment(s) that could reasonably be expected to produce the pain alleged. 20 C.F.R. § 404.1529(a).

For claims filed before March 27, 2017, § 404.1527 outlines the framework for consideration of medical opinions and prior administrative medical findings in assessing a claimant's RFC. 20 C.F.R. § 404.1527. Under these "old" regulations, opinions from treating physicians are given preference. *Id.*

Section 404.1520c is effective for cases filed on or after March 27, 2017, as Plaintiff's claims were, and, accordingly, these "new" regulations apply here. Section 404.1520c "eliminated the hierarchy of medical source opinions that gave preference to treating sources." *David K. v. Kijakazi*, Civ. A. No. 20-12419, 2022 U.S. Dist. LEXIS 13989, at *21 (D.N.J. Jan. 25, 2022). Under the new regulations, the following five factors are considered for all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). The most important factors when evaluating the persuasiveness of medical opinions are supportability and consistency. 20 C.F.R. § 404.1520c(a). Supportability means the extent to which a medical source supports her medical opinion by explaining the relevant objective medical evidence. 20 C.F.R. § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim. 20 C.F.R. § 404.1520c(c)(2). When articulating how the ALJ considered medical opinions and prior administrative medical findings in a particular case, the ALJ is *specifically* required by

the regulations to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ must explain his or her reasoning such that the RFC determination is amenable to meaningful review. *Burnett*, 220 F.3d at 119.

The Court is persuaded the ALJ's analysis of Dr. Wancier's and Dr. Bitner's opinions did not adequately articulate the supportability and consistency factors as required by the new regulations. Here, the ALJ gives short shrift to the medical opinions of Drs. Wancier and Bitner. The ALJ does not address the consistency of Dr. Wancier's and Dr. Bitner's opinions to one another, although it is evident from the decision each opines Plaintiff would be absent more than three times a month and has constant deficiencies or interferences with concentration. (Tr. 19.) The ALJ does not articulate why these opinions are inconsistent with the DDS expert opinions he found persuasive or why these opinions are inconsistent with other evidence. The Commissioner's brief compares and contrasts the record evidence with the medical opinions, but such analysis is absent from the ALJ's decision (*compare* ECF No. 17 at 15–17 *with* Tr. 19), and therefore constitutes a failure by the ALJ to abide by the mandates of the regulations. *See Kenyon v. Saul*, Civ. A. No. 20-1372, 2021 U.S. Dist. LEXIS 94685, at *21–22 (M.D. Pa. May 19, 2021) (vacating decision and remanding for new hearing where the ALJ failed to articulate his assessment of any of the five factors established in 20 C.F.R. § 404.1520c(c), and, particularly, the consistency and relationship factors). Moreover, the ALJ does not discuss to any degree the supportability of any of the medical opinions as required by § 404.1520c(b)(2).

In sum, the ALJ's terse treatment has precluded this Court from conducting meaningful review of his persuasiveness assessment, and post hoc rationalizations of the Commissioner are not an acceptable basis to affirm the decision. *Campbell v. Colvin*, Civ. A. No. 12–1968, 2014 U.S.

Dist. LEXIS 8029, at *23 (M.D. Pa. Jan. 23, 2014) (noting it is the role of a court to review the ALJ's decision, not the post-hoc rationalizations raised by the Commissioner in her brief). If the ALJ believes the opinions of Drs. Wancier and Bitner are inconsistent with the record and unsupported, he must explain why. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in [his or her] decision.").

Notably, Drs. Wancier and Bitner's capacity assessments concluded Plaintiff would be absent more than three times a month (Tr. 19), and the vocational expert testified an individual who would need to be absent two days or more per month due to symptoms of any kind would be work-preclusive (Tr. 51). Had the ALJ found these two sources persuasive, the ALJ would have found Plaintiff disabled and awarded her benefits. Accordingly, the ALJ's error cannot be said to be harmless. Consequently, the Court remands this matter based on the ALJ's failure to properly articulate his assessment of the opinions of Dr. Wancier, Dr. Bitner, and the DDS in explaining his RFC determination.

V.     **CONCLUSION**

For the reasons set forth above, the Court **VACATES** the decision of the ALJ and **REMANDS** this matter to the ALJ for further proceedings. An appropriate order follows.

*/s/ Brian R. Martinotti*
HON. BRIAN R. MARTINOTTI
UNITED STATES DISTRICT JUDGE

Date: August 17, 2022